May it please the Court, Mark Perry for Hawaiian Airlines. The District Court in this case vacated an award of the System Board of Arbitration on the ground that the Board had exceeded its jurisdiction. In that, the District Court committed legal error. The jurisdiction of the Board, Your Honors, is defined by the Collective Bargaining Agreement. That is the holding of the Supreme Court in the Warrior and Gulf case and has never been questioned by any court. The District Court basically just says that, I mean, you have to tell someone what they're charged with. And if you make the decision, you know, if you make the decision based on other things, I mean, that's sort of just a basic due process thing. How can a person, you know, if you just come up with other reasons and start throwing those in, that seems pretty fundamental. Judge Callahan, let me answer that in two steps. First, that is not a jurisdictional problem. It may be a due process problem, and I'll address it in the due process context. The jurisdiction of the Board, however, is defined by the agreement, Section 17C of the agreement, to extend to any grievance as defined in Section 16. This is clearly a grievance as defined in Section 16. Section 16 defines grievance as termination. This is a termination case. If there's any doubt about that, two further provisions of Section 17. This is, by the way, an excerpt of Record Page 147. The statute, this section of the collective bargaining agreement, jurisdiction of the Board, is the only one that controls jurisdiction. It contains three express exceptions from the Board's jurisdiction. Hours of employment, rates of compensation, or working conditions. If the Board had gone to one of those, and Judge Callahan, I am answering your question in the sense that if the Board had gone in one of those directions and thereby exceeded its jurisdiction, then we would have an issue. None of the issues relied on by the Board go to the express exclusions. If there were any further doubt, the next provision of the jurisdiction section says, the Board shall consider any dispute submitted to it by the President of Alpha. The union, the union representing the pilots. This dispute was brought to the Board by the union. That's in the upper preference. Because there's such deference given to arbitration, it seems that that only emphasizes the need for, you know, specificity in terms of what people have to defend. I mean, I had to kind of think about this, and I may have vacated an arbitration award at some point, but nothing really came to mind, and I've been an appellate judge for a very long time. But, you know, there's certain things here that I'm sure that you would probably love to distance yourself from, but this arbitration board, you know, seemed pretty intent about evading the court. You know, frankly, when it was in court and they found out what the court did and what the court had a problem with, attorneys representing Hawaiian Airlines went to the arbitration board ex parte to make a harmless error determination. I mean, that frequently, you know, that is pretty appalling behavior. Your Honor, Section 153M of the Railway Labor Arbitration Act expressly authorizes the arbitrators to interpret an award on the request of either party. But after they know the court has spoken, saying there's a problem, you're saying even though they disciplined this person, that was okay for Hawaiian Airlines to do? Your Honor, the statute authorized the board to interpret the award. But, and this is an important but, the district court has resolved that issue. The district court has said that the clarification is invalid. It also said there was absolutely no fraud in procuring that clarification. Neither party has appealed from that order. That's out of the case, Your Honor. This board ---- Well, as to the fraud part of it, but that's, you're still saying that was perfectly appropriate behavior? Your Honor, I think it was arguable. There was very little case law. There's an express statute that the district court didn't address, 153---- If it was arguable, why did he get sanctioned, why did he get disciplined? No, Your Honor. Hawaiians seeking the clarification was arguable. Mr. Conop's behavior was absolutely reprehensible, and he's been ordered to pay hundreds of thousands of dollars. No, but the arbitrator got disciplined. Your Honor, the arbitrator was admonished to read the rules. It was the very most minor discipline available under the National Arbitration Board's rules. And the National Arbitration Board did not consider Section 153M of the RLA, which was a statutory provision that was never addressed by either the district court or the board. But as I said, that issue is not, in our opinion, before this Court, because no party has appealed from Judge Marshall's subsequent order on that, in fact, which came after this appeal was pending in this Court. Yeah. Let me ask you about the merits of this. The logic of Judge Marshall's order is that the board hung its hat on allegations that were not included in the charge. Right. What's the answer to that? Your Honor, the charge is that Mr. Conoff lied to the bankruptcy court. The bankruptcy court found that he lied and sanctioned him for lying. The charge was that he lied to the bankruptcy court. But they also found him basically guilty of disparaging the company and disparaging employees, and that's different. Your Honor, the bankruptcy proceedings, the complete record, which is before the vice president of flight operations, the contract officer who makes the termination decision, he found that each of the eight substantive charges in the statement of charges were all substantiated by the full record of the bankruptcy proceedings. The system board's award, with the exception of one paragraph relating to Mr. Conoff's appearance at the system control office one day, every other word in the system board's 49-page award is directly supported by the full record of the bankruptcy court proceedings. The full record of bankruptcy court proceedings, which were before the contract officer, the vice president of flight operations, and expressly cited in the termination letter, which is the operative document under the contract. So this fair notice argument that Judge Marshall relied on really doesn't take into account, there's a three-step process. There's the statement of charges, which said you lied to the bankruptcy court. Then there's an initial administrative grievance before the vice president of flight operations. That determination, which is in the record, Your Honor, ER 156 and 57, the vice president of flight operations found that the statement of charges was substantiated by, quote, the full record of the Hawaiian Airlines bankruptcy case. Well, they found that he disparaged the company officials to other employees and the general public via the website. Correct, Your Honor. Was that in the charge? Absolutely, Your Honor. The statement of charges details the, Your Honor. Where is that? Well, it goes to the objections and motions, and then the website is the very last. The statement of charges, Your Honor, is on page 152 and 153 of the record. 152, I've got it here. Okay. 153, on 153, the last little arrow above B, you're censured by the bankruptcy court for representing that the court had approved your disclosure statement. I'm sorry, 153? The last little arrow above B. Yes, Your Honor. You're censured by the bankruptcy court for representing the court has approved your disclosure statement when, in fact, as you admitted, just the opposite was true. That is a reference to the website, Your Honor. Well, it doesn't say website on here. Well, Your Honor, the representation that's referred to is his website representation. There's no dispute about that. He represented the approval on his website, and the bankruptcy court sanctioned him for that because it was not true, because the bankruptcy court, in fact, not only did not approve his disclosure statement, discharged it with prejudice and found him guilty of committing fraud in the bankruptcy court. You know, Mr. Konop has been sanctioned hundreds of thousands of dollars for this misconduct. This isn't the case. Well, now, you have Konop 1, and Konop 1 basically said that he's got acknowledged certain First Amendment rights and said you have to go beyond that and show malice and other things. Correct? If he's engaging in concerted activity. Right. And the rule about disparaging the company, where was that rule passed relative to Mr. Konop's case? The House rule against disparagement? Yes. There has always been, my understanding is, there has always been a House rule against casting a company in a bad light as long as Mr. Konop has been employed at Hawaiian. The specific House rules in this case. The House rule that he's challenging that's saying is that why this would be that he would have access to the courts, it seems to me that that rule was passed somehow relative to his particular case. No, Your Honor. These House rules are uniform and apply to all pilots employed by Hawaiian. When was it passed relative to his case? I don't know the answer to that, Your Honor. I could tell you on rebuttal. It is in the executive record. I think it was passed relative to when his case was ongoing. I'm curious about that. I don't know the answer to that, Your Honor. Did they charge him with making false or unproven statements about other employees? They did, Your Honor. House rule 14 applies to falsifications of any kind and false statements about another employee. On the most basic level here, Your Honor, every shop rule that I'm aware of prohibits dishonesty that relates to employment. Here we have clear dishonesty. He lied about the funding when he was trying to take over the company. This is not unrelated to his employment. He's been found guilty of that by every judicial officer to look at it. That was a statement of charges. That was the basis of the termination. And that's the basis of the system board award. The termination letter, in fact, expressly says that any one of the facts alleged in the statement of charges would be sufficient to support his discharge. I have a question. If you lose here and we affirm the district court, does this go back and then is he reinstated or what happens? He is not reinstated. In fact, Judge Marshall made that clear in her most recent order in August of 08 that she has not ordered reinstatement. If the order vacating the award stands, the last act under the contract is the termination letter by the He would then have the obligation to restart the system board process with a new arbitration. She has vacated the system board award. Judge Marshall did not and should not have the authority to vacate the underlying termination. And she did not order reinstatement. Thank you, Mr. Perry. Thank you. Mr. Conant. Good morning. Robert Conant. I've just got a couple of quick comments and I can answer any questions you might have. In fact, I think you had a couple of questions for Mr. Perry that I might be able to answer. But preliminarily, there are a couple of things in their brief that are misleading at best. And I didn't hear anybody bring it up, but I just wanted to get this preliminary out of the way. They've got a three-quarter of a page footnote on page 29 of their opening brief that is basically talking about or complaining about the fact that the district court denied judicial notice for the transcript of the underlying arbitration. And that really is misleading to everybody because, in fact, the entire transcript of the proceeding had been put in for the record by me when I initially filed. The references there to my objection in the district court to this judicial notice request is only partial. I complained about the fact that, number one, the transcript was incomplete, and, number two, that the entire transcript of all four days of the arbitration proceeding were already in the record as put in by me when I first filed my petition. Let me ask you what's worrying me. The main part of Judge Marshall's order is that the arbitration award can't stand because they hung their hat on findings that weren't in the charges against you. Correct. Mr. Perry says they were all there. Can you tell us what specifically was not there that you're complaining about? Virtually nothing that was handled in the arbitration area was in the charges. The charges referenced some house rules, and the house rules said that I was disloyal, that I failed to work with management, and that I was guilty of misrepresentation. And within the charges, the statement of charges, there were eight specifics cited there, and none of them had anything to do with the bankruptcy court other than the reference to the website statement that there was the ‑‑ in fact, it didn't say a disclosure statement had been approved, and this wasn't something that I put on this website. This is a website that is accessed by quite a few Hawaiian employees, and various people post various things. This was a statement that said the bankruptcy court had accepted some evidence of financial capability, which admittedly was not correct. But when I found out it was there, and I didn't find out until the bankruptcy court notified me of the fact, I removed that reference because it was just wrong, and I knew it was wrong. So, you know, I didn't do that. I'm not saying you did it. That's not the issue. The issue is did they give you notice of what they were going to fire you for, and then the bankruptcy court ‑‑ I mean, then the arbitration board finds something else instead. Yes. What exactly did they find instead? Specifically, I was charged with making a misrepresentation in a disclosure statement, a September 20, 2004 disclosure statement, with reference to financial backing from USA Capital. In fact, Hawaiian had assumed that this reference was to somebody else, which was the Hawaiian Airlines Reorganization Committee, Hawaiian Investment Partners Group, and this E&M Trust. In fact, this disclosure statement was correct. The financing that was referenced there was correct and accurate. I'm not saying it was correct or incorrect. Right. Did they tell you that that's what they're ‑‑ That was what they charged me with. It didn't go beyond that. And, in fact, in the arbitration hearing, we never touched on anything else other than things that were not in the statement of charges, other than in the context that they were saying it was a disloyalty, a failure to work with management, that it had somehow obstructed the ratification of the contract that Hawaiian's trustee wanted. And the obstruction of the contract, of course, that's something that I kind of take personally, because I was campaigning. I admit, I campaigned against the ratification of this contract. I was against ratification of the contract. The company knew I was probably the largest force against the ratification of this contract. And as far as, you know, the fact that they were bringing this up, and they had testimony about what effect my concerted activities against the contract had on the ratification process. That was part of the testimony, but that was not part of the charges. I mean, they were inferring in the charges that, yes, this was a factor, and that it cost them money that the contract, the pilot contract, was not ratified. So, with respect to what they charged, that is correct. That part of it is correct. But with respect to what the arbitrator ultimately found, those were things that just, you know, kept coming. It was kind of a moving target for me and the output attorneys. And, in fact, the output attorneys were convinced at the end of this whole thing that we had prevailed on each of the eight items that had been mentioned, because there was no evidence on any of the eight items that were specifically mentioned. Well, let me go back to the charge, because there's been talk about the website. If you look at the charge itself in the first paragraph, one of the charges is that you were lying about the court's actions on your public website. I think that was an attack on the company. And then it's broken down a little bit. A, the facts surrounding your dismissal included numerous falsifications and acts of dishonesty by you, including but not limited to the following. And there's a whole list of acts that occurred in the bankruptcy that, in essence, you were found guilty of. And I think the other counsel was asked this question, was there anything else? And I think his answer was correct. And that was everything that you were convicted of it, for at least this portion of it, before you get to the house rules, was acts that were taken in the bankruptcy, except the COM, and I forget what that means. But anyway, you know, what is your real claim, then? That they didn't have jurisdiction to look at bits and pieces of evidence? No. The arbitration panel, with regard to the jurisdiction of the arbitration panel, I think what Mr. Perry has said is incorrect. Because just like the court, there are other provisions of this arbitration agreement and those sections which talk about limits, for example, timeliness. If I was to have grieved this process beyond the time limit, the arbitration panel did not have the authority to look at my grievance, and that is not in the section. Well, let's just talk about what the arbitration panel actually found. Didn't they find that you basically lied throughout the bankruptcy proceeding, and just about all of their findings, as my recollection of reading these things, all of these findings, except for the house rules, revolved around statements that you made on the Web site, which certainly had notice of that, and what occurred in the bankruptcy proceeding. So I'm back to Mr. Perry's point, and that is you had adequate notice. I'm asking this as a question, by the way. You had adequate notice of that, of the charge, and that is lying during the course of the bankruptcy proceedings, including all these things, but not limited to. And with the arbitrator having arguable authority to, you know, decide anything, what else is there besides what occurred in the bankruptcy proceeding that you claim you did not have notice of? Well, specifically, the charges that I had initially had to do with specifically just this one disclosure statement, dated September 20, 2004. At the arbitration hearing, they went back to my very first finding in the bankruptcy court, which was an objection to Hawaiians' proposed failure or proposal not to pay retirement fund. And I came back, and I had an objection to that, and as you probably well know, one of the objections you have is that, well, there's an assumption of management qualification and management being right about something, and what I included in my objection was instances where management had done things that were not right, not in accordance with the Federal Aviation Regulations, not financially right, to show that the assumption of management good judgment in this really wasn't an assumption that could be routinely made. There was more that should be looked at in that regard. That's actually something that was testified to in great detail at the arbitration. My question is, what is in the arbitrator's award that is not included in the bankruptcy proceedings, the website, or the house rules? What I didn't have notice of was the entire course, you know, talking about the entire course of my objection, which took two years. Okay. We did not have any notice of that, and it's supposed to be a specific statement. It's not a generalized statement, the entire course of the bankruptcy proceedings. That goes to jurisdiction also in the contract, which, you know, Mr. Perry hasn't recognized. There are limits specifically set forth there for very good reasons, and that one statement that, you know, this is what the arbitration panel will look at is not all of the jurisdictional limitations. Out of the 74 paragraphs, I think there are in those two sections that we're talking about, there are only six that deal with jurisdictional issues. But that includes. What's your definition of jurisdictional issue? Well, timeliness. The arbitration panel did not have the authority to look at my grievance if I put it in late. At the same time, the arbitration panel was compelled, if the company didn't follow the procedures, to have a certain result. That's jurisdictional. Okay. If we were to say, oh, it's only this type of grievance in that one paragraph, okay, you can say that, but there are other jurisdictional issues in there. And if we were to limit it to what Mr. Perry has said, there would be, you know, substantially more than I could do in a grievance, for example. I could go back and grieve new things now if I wasn't limited to the 30 days. And that isn't the case. I see your time is up. Unless Judge Quist has anything else. Judge Callahan? No. Mr. Perry, you used up your time. I'll give you a minute in rebuttal if you would kindly keep it to a minute, please,  Thank you, Your Honor. All right. Judge Callahan, the House rules. Maybe you can answer the question would be, obviously, they went back to seek clarification. What was it that Judge Marshall said went outside? Judge Marshall said there were two things, the appearance of Mr. Conop in the Flight Operations Center and motions in the Bankruptcy Court where the statement of charges only related to objections. The first one we agree. There's nothing in the statement of charges as to that one paragraph about the Flight Operations Center, but it's irrelevant. And second, she's just wrong. The statement of charges refers three times to the motions filed by Mr. Conop in the Bankruptcy Court. It expressly says his motions were denied, they were extreporous. And the termination letter, which is the operative officer's document under the contract, repeatedly refers to the motions that he filed and that were denied. So what was the need for clarification then? Your Honor, the need for clarification was whether if that one paragraph about the Flight Operations Center weren't in the award, would it have made any difference to the arbitrators? Of course it would not have, and the arbitrators said that in their clarification. That's all the clarification says. The House rules, Judge Callahan, were adopted May 1, 2000. That's the Supplemental Excerpt of Record, tab 25. That was before this bankruptcy, before any of the proceedings in this case. These House rules have been in effect throughout. And they apply House Rule 2.1 to all Hawaiian Airlines employees at all locations. These are not Conop-specific rules. They are generally applicable House rules that under this Court's Hawaii Teamsters decision have to be sustained. Thank you. Let me make sure I understand your position. Your position, then, is this is not a matter of jurisdiction because the jurisdiction is statutory and it's easy to figure out. It might be a matter of adequate notice, but if it is, that's a matter for the arbitrator to decide. Absolutely, Your Honor. And that's the plain teaching of the Steelworkers Trilogy, that we're in the realm of arbitration, and if we were to allow this kind of a loophole to steelworkers, you could literally fly a 767 through it, Your Honor. Thank you. Thank you very much. Case for Starkey just submitted. Good morning, gentlemen. The next two cases, EEOC v. American Apparel and Ham v. Selectron International, and for that matter, the third case, Sussman v. Provident Life. These cases are submitted on the briefs at this time.
judges: Silverman, Callahan, Quist